PARSONS BEHLE & LATIMER
BRIAN M. ROTHSCHILD – (Cal. Bar No. 252573)
BRothschild@parsonsbehle.com
MICHAEL W. YOUNG – Utah Bar # 12282 (pro hac vice pending)
MYoung@parsonsbehle.com
LAUREN M. HUNT – Utah Bar # 14682 (pro hac vice pending)
LHunt@parsonsbehle.com
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone:   801.532.1234
Facsimile:    801.536.6111

*Attorneys for Plaintiff Deborah Morreall*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBORAH KAY MORREALL, an individual, <br><br> Plaintiff, <br><br> v. <br><br> AZHAR AHMED KALIM, an individual, <br><br> Defendant. | Case No. **'21CV1127 H    DEB** <br><br> **COMPLAINT** <br><br><br> **JURY TRIAL DEMANDED** |

## SUMMARY OF CASE

On June 21, 2019, Deborah Morreall matched with Mr. Azhar Kalim over the dating app, Tinder. Throughout the day, Deborah chatted with Mr. Kalim. Their conversation turned from flirty to sexual. Mr. Kalim represented to Deborah that he was sexually inexperienced and had sexual performance issues. Deborah let Mr. Kalim know that she did not like anal sex or masochism. Deborah believed that Mr. Kalim was a meek man.

Still, to be safe, Deborah ordered a background check on Mr. Kalim and did a Google search of Mr. Kalim. Everything that Mr. Kalim had told Deborah was true: Mr. Kalim lived in Philadelphia; Mr. Kalim was the Chief Commercial Officer of ACM Global Laboratories; and Mr. Kalim was in San Diego, California for a healthcare conference. Deborah agreed to meet Mr. Kalim at the lobby of the Marriott Marquis in San Diego, California during lunch hour.

Upon meeting Mr. Kalim, Deborah felt safe. However, after Mr. Kalim escorted Deborah

to his hotel room, things drastically changed. Mr. Kalim immediately pushed Deborah onto the bed and proceeded to pull Deborah's dress over her head and her underwear down to her knees.

Mr. Kalim rammed his hand into Deborah's vagina and anus. Mr. Kalim slapped Deborah on her breasts, torso, buttocks, and thighs. All the while, Deborah yelled out in pain and asked Mr. Kalim to stop or be gentler. Multiple times, Mr. Kalim acknowledged Deborah, said that he was sorry, and promised to be gentler—but Mr. Kalim continued to physically and sexually assault and batter Deborah. At one point, Mr. Kalim forcefully grabbed Deborah's breasts and twisted them. Deborah yelled and asked Mr. Kalim to stop or be gentler. Mr. Kalim held her down and covered her mouth, stating that she had to be quiet. Mr. Kalim, then, aggressively bit her breasts as Deborah yelled out in pain.

Mr. Kalim next ordered Deborah to get on her hands and knees on the floor. As she complied out of fear, Mr. Kalim continued to slap Deborah's breasts, torso, buttocks, and thighs. Once on the ground, Mr. Kalim forcefully sat on Deborah's back and told her that he was going to "ride her like a pony." Mr. Kalim ordered Deborah to walk on her hands and knees across the room while saying his name.

Deborah yelled out in pain and asked Mr. Kalim to stop. Mr. Kalim became aggravated, and Mr. Kalim proceeded to grab Deborah by the neck. Mr. Kalim lifted Deborah off the ground from her neck. Deborah felt short of breath and dizzy. Deborah feared for her life. While holding her by her neck, Mr. Kalim threatened Deborah to be quiet. Out of fear, Deborah complied.

Upon reaching the bathroom, Mr. Kalim ordered Deborah to get into the shower. In the shower, Mr. Kalim pinned Deborah against the wall and continued to shove his hand into Deborah's vagina and anus. At some point, Mr. Kalim received a message from his boss, and Mr. Kalim told Deborah that he had to leave.

Fearing for her life, Deborah acted calmly. Mr. Kalim ordered her to put her clothes on. Deborah complied. Then, Mr. Kalim escorted Deborah to the lobby of the hotel while kissing her in the elevator. Deborah "played along" to not aggravate Mr. Kalim.

Once Deborah had flown back to Utah and felt somewhat safe, Deborah notified Mr. Kalim that what he did was wrong. Deborah had bruises throughout her body. Deborah was also

Parsons Behle & Latimer
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
801.532.1234

PBL\4848-5741-5406.v2-6/16/21

emotionally and psychologically scarred from her encounter with Mr. Kalim. After resting, Deborah contacted community resources for rape victims.

Since then, Deborah has struggled with severe anxiety, depression, and emotional distress with physical manifestations. Every day, Deborah faces a new challenge due to the harm Mr. Kalim caused her. In turn, the things that Mr. Kalim did to Deborah has affected Deborah daily life and ability to work and study.

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Deborah K. Morreall is an adult individual and a resident of Utah.

2. Defendant Azhar A. Kalim is an adult individual and a resident of Chester Spring, Pennsylvania.

3. This Court has personal jurisdiction over Defendant pursuant to California Code of Civil Procedure § 410.10 because Plaintiff's injuries described herein arouse out of and related to Defendant's actions in California.

4. Federal diversity jurisdiction exists pursuant to 28 U.S.C. § 1332. Plaintiff is an individual residing in Utah. Defendant is an individual residing in Pennsylvania. Therefore, complete diversity of citizenship exists. The amount in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, as a substantial part of the events giving rise to the claim occurred in San Diego, California.

## GENERAL ALLEGATIONS

6. On June 21, 2019, Deborah K. Morreall travelled to San Diego, California with her daughter for her daughter's archery tournament.

7. On June 22, 2019, Deborah matched with Defendant on Tinder.

8. Throughout the day, Deborah chatted with Defendant on Tinder.

9. Defendant represented to Deborah that he lived in Philadelphia and travelled to San Diego with his sales team for a healthcare conference.

10. Upon discovering Deborah had to leave the next day, Defendant tried to convince Deborah to stay an extra day in San Diego.

11. Defendant even offered to pay for the cost of changing Deborah's flight.

12. Deborah considered Defendant's offer but, ultimately, declined his offer.

13. Deborah agreed to meet with Defendant for a brief meeting the next day before her flight.

14. Before meeting Defendant, Deborah ordered a background check on Defendant and conducted a general Google on Defendant as a precaution.

15. The results of the background check confirmed the information that Defendant had told Deborah, including that Defendant lived in Philadelphia and was a chief officer of a large healthcare company.

16. On June 23, 2019, Deborah continued messaging Defendant.

17. Their messages were flirtatious and sexual.

18. In their messages, Deborah was clear with Defendant that she did not like anal sex and was not into sadomasochism.

19. Defendant represented to Deborah that he was sexually inexperienced, had performance issues, had not had sex for several months, and preferred gentle sex—leading Deborah to believe that Defendant was a meek man.

20. Deborah felt safe meeting Defendant in a public place in the middle of the afternoon.

21. At 12:45 PM, Deborah meet Defendant in the main lobby of the Marriot Marquis in San Diego.

22. Defendant led Deborah back to his hotel room.

23. Once in his hotel room, Defendant locked the door behind him and kissed Deborah.

24. Defendant then pushed Deborah onto the bed.

25. Defendant lifted Deborah's dress up and around her neck and pulled Deborah's underwear down to her knees.

26. Defendant then forcefully and aggressively inserted four of his fingers into Deborah's vagina.

27. Deborah yelled out for Defendant to "slow down" and "be gentle."

28. Defendant stopped, promised to be gentler, and removed Deborah's brassiere and dress.

29. However, Defendant continued to thrust his hand into Deborah's vagina.

4
COMPLAINT
Case No.

30. Deborah, again, yelled for Defendant to be "slow down" and "be gentle."

31. Deborah told Defendant that he was being "too rough" with her.

32. Defendant apologized and promised to be gentler.

33. Defendant then proceeded to straddle Deborah on the bed and grab both of her breasts.

34. Defendant squeezed Deborah's breast as hard as he could and forcefully twisted them.

35. Deborah yelled out in pain, and Defendant said "Sorry, sorry, I'll be more gentle."

36. However, Defendant continued to aggressively squeeze and twist Deborah's breasts.

37. Deborah attempted to stop Defendant with her hands.

38. However, Defendant pinned Deborah's arms down with his right hand and covered her mouth with his left hand.

39. Defendant told Deborah to "Shut up. Be quiet. My boss' room is next door. He'll hear you."

40. Deborah saw blood on her breast.

41. Defendant, then, slapped Deborah's breasts and belly and said "Sorry, I'll be more gentle."

42. Defendant began biting Deborah's nipple, and Deborah yelled in pain.

43. Deborah yelled, "Stop! That hurts!"

44. Defendant stood up, spread Deborah's legs, and pinched and twisted Deborah's clitoris.

45. Defendant then ordered Deborah to get on her hands and knees.

46. As Deborah was complying, Defendant slapped Deborah's breast and belly again.

47. Once Deborah was on her hands and knees, Defendant slapped Deborah's buttocks.

48. Defendant asked Deborah if she liked it, and Deborah said "No, that's too hard! Be softer!"

49. Defendant again promised to be gentler.

50. Still, Defendant slapped Deborah's buttocks a few more times as Deborah yelled out in pain each time.

51. Defendant then rammed his hand into Deborah's anus.

52. Deborah continued to yell out in pain and for Defendant to stop.

53. Defendant, instead, grabbed Deborah by her hair, pinned her down, and continued to sodomize Deborah with his hand.

54. Deborah continued to yell.

55. Defendant covered Deborah's mouth again and told her to be quiet because his boss would hear her.

56. Defendant, then, ordered Deborah to get off the bed and to get on her hands and knees on the floor.

57. Deborah was terrified, and she complied to avoid aggravating Defendant.

58. Defendant continued hitting Deborah's breasts, torso, and buttocks with his hands.

59. Deborah continued to yell out in pain each time.

60. Defendant, next, sat on Deborah's back and said, "I'm going to ride you like a pony."

61. Defendant ordered Deborah to walk forward and say his name.

62. Deborah complied.

63. As Defendant bounced on Deborah's back, Deborah yelled out in pain.

64. Defendant, then, grabbed Deborah by the neck and began to lift Deborah off the floor by her neck.

65. Defendant again told Deborah to be quiet because his boss would hear her.

66. After Defendant let go of Deborah's neck, Deborah felt nauseous and disoriented but committed to surviving this encounter.

67. Defendant ordered Deborah to continue crawling on her hands and knees across the room as Defendant rode her back.

68. Defendant, then, ordered Deborah to get into the shower.

69. Once Deborah was in the shower, Defendant pinned her against a shower wall and rammed his hand into her vagina.

70. Deborah yelled out in pain and told Defendant that he was hurting her.

71. Defendant turned Deborah around to pin her from behind against the shower wall. Deborah's face was against the shower wall.

72. Defendant continued to ram his fingers and hand into Deborah's vagina and anus.

73. Then, Defendant received a message from his boss.

74. Defendant told Deborah that he had to leave and ordered her to put on her clothes.

75. Deborah acted calmly and pretended to be fine to get out of Defendant's room without further incident.

76. Defendant then escorted Deborah to the lobby, while kissing her, and gave Deborah a hotel key for her to return in the afternoon.

77. Deborah continued to comply and act calmly.

78. Once Deborah felt safe, away from Defendant, Deborah told Defendant that what he did was not acceptable.

79. That night, Deborah contacted SafeUT.

80. On June 24, 2019, Deborah contacted the Rape Recovery Center. Officers and advocates collected pictures and evidence of Defendant's attack on Deborah and wrote a report. (Attached herein as **Exhibit A**)

81. Deborah had bruises throughout her body.

82. Since the attack, Deborah has had severe anxiety, depression, and other mental health issues with physical manifestations.

83. This has affected Deborah's ability to work and study as Deborah has had to miss a significant amount of work and school assignments to recuperate and feel safe again.

## FIRST CAUSE OF ACTION

### (Sexual Battery by Plaintiff Morreall against Defendant Kalim)

84. Plaintiff incorporates and realleges the allegations of each of the preceding paragraphs as if fully set forth herein.

85. Defendant intentionally touched Deborah's intimate parts in a harmful and offensive way.

86. Defendant intended to harm and offend Deborah.

87. Deborah did not consent to Defendant's actions. Instead, Deborah yelled in pain and plead for Defendant to stop or be gentler.

88. In the alternative, if Deborah initially consented to some touching, she withdrew consent

when the touching became painful and harmful.

89. However, Defendant did not stop, and Defendant was not gentler. Thereby, Defendant exceeded the scope of any consent that Deborah may have given him.

90. Deborah was harmed and offended by Defendant's actions as described herein.

91. A reasonable person in Deborah's situation would have been offended by Defendant's actions.

## SECOND CAUSE OF ACTION

### (Assault by Plaintiff Morreall against Defendant Kalim)

92. Plaintiff incorporates and realleges the allegations of each of the preceding paragraphs as if fully set forth herein.

93. Defendant acted, knowing or intending to cause harmful and offensive contact, on Deborah when he physically attacked Deborah and, then, ordered Deborah to do things that Deborah did not want to do (but she did so out of fear).

94. Deborah reasonably believed that she was about to be touched in a harmful and offensive manner. Deborah feared for her life as Defendant barked orders at her. Defendant had already sexually assaulted her, hit her breast, torso, and buttocks, aggressively pulled her hair, and picked her up by her throat. Deborah did not know what else Defendant might have done to her if she did not comply with Defendant's orders.

95. Deborah did not consent to Defendant's conduct.

96. Any consent that Deborah may have given Defendant was invalidated when Defendant exceeded the scope of Deborah's consent. Deborah clearly told Defendant that she did not engage in anal sex before their encounter, and Deborah clearly told Defendant to stop what he was doing to her during their encounter. However, Defendant ignored Deborah's pleas and assaulted, beat, and sodomized Deborah.

97. Defendant's conduct harmed Deborah as described herein.

98. Defendant's conduct was a substantial factor in causing Deborah's harm.

### THIRD CAUSE OF ACTION

**(Intentional Infliction of Emotional Distress by Plaintiff Morreall against Defendant Kalim)**

99. Plaintiff incorporates and realleges the allegations of each of the preceding paragraphs as if fully set forth herein.

100. Defendant's conduct was outrageous.

101. Defendant intended to cause Deborah's emotional distress or Defendant acted with reckless disregard of the possibility that Deborah might suffer emotional distress. Deborah pleaded for Defendant to stop and be gentler; however, Defendant disregarded Deborah's pleas, knowing that Deborah did not consent to Defendant's actions.

102. Defendant gave little or no thought to the probable effects of his conduct.

103. Deborah has suffered and continues to suffer emotional distress with physical manifestations due to Defendant's actions.

104. Defendant's conduct was a substantial factor in causing Deborah's severe emotional distress and physical manifestations of her emotional distress.

105. As a consequent, proximate, and foreseeable result of Defendant's actions, Deborah has suffered, and continues to suffer, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, fright, horror, shame, humiliation, anxiety, loss of enjoyment of life, all of a kind that no reasonable person in a civilized society should be expected to endure or that an ordinary, reasonable person would be able to cope with. Deborah has sustained and will continued to sustain loss of earning and earning capacity and had incurred expenses for medical and psychological treatment, therapy, and counseling.

### PRAYER FOR RELIEF

Wherefore, Plaintiff prays for judgement against Defendant as follows:

1. For an award of damages sufficient to compensate Plaintiffs fully for the consequences of the injuries caused by Defendant, including but not limited to the following:

    a. Past and future damages for medical care and expenses in an amount to be determined

at trial.

    b. Past and future damages for lost wages in an amount to be determined at trial.

    c. General damages for pain, suffering, emotional distress, other non-economic injuries, and the loss of enjoyment of life in an amount to be determined at trial.

2. For pre- and post-judgment interest to the extent permitted by law.
3. For punitive or exemplary damages in an amount to be determined at trial.
4. For attorney fees and costs.
5. For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: June 17, 2021                PARSONS BEHLE & LATIMER

                                          /s/ Brian M. Rothschild
                                          BRIAN M. ROTHSCHILD

                                          *Attorneys for Plaintiff Deborah Morreall*

Parsons Behle & Latimer
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
801.532.1234

10
COMPLAINT
Case No.

PBL\4848-5741-5406.v2-6/16/21